UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
LE METIER BEAUTY INVESTMENT PARTNERS
LLC, AND UNATTAINABLE BEAUTY, LLC

                Plaintiffs,

                Case No.: 13-cv-4650

   -against-

METIER TRIBECA, LLC, AND RICHARD BLANCH,

                Defendants.
----------------------------------------------------------------X

# DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS THE COMPLAINT

THE ROTH LAW FIRM, PLLC
Richard A. Roth, Esq.
Jordan M. Kam, Esq.
295 Madison Avenue, 22nd Floor
New York, New York 10017

*Attorneys for Defendants*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT..................................................................1

ARGUMENT..........................................................................................3

    I.      Plaintiffs' Fraud-Based Claims Cannot be Saved............................3

    II.     All Claims Relating to the Island Def Jam Music Agreement
          Must be Dismissed..............................................................8

    III.    The Remaining Pendant Claims Must be Dismissed.........................9

    IV.    Plaintiffs do not Contest that, Assuming Plaintiffs' Federal
          Claims Fail, the Complaint Should be Dismissed for Lack of
          Subject Matter Jurisdiction...................................................10

CONCLUSION......................................................................................10

# TABLE OF AUTHORITIES

Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566 (2d Cir. 2005)................5

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 105 (2d Cir. 2007).......................4

Channel Master Corp. v Aluminum Ltd. Sales, 4 N.Y.2d 403 (1958)...............................2

Citibank, N.A. v. Plapinger, 66 N.Y.2d 90 (Ct. App. 1985).........................................6

Galvatron Industries Corp. v. Greenberg, 96 A.D.2d 881 (2d Dep't 1983)........................5-6

Goodman Mfg. Co. v. Raytheon Co., No 98-2774, 1999 WL 681382 (S.D.N.Y. 1999)..........3

Grumman Allied Indus. Inc. v. Rohr Indus. Inc., 748 F.2d 729 (2d Cir. 1984)...................6-7

Harborview Master Fund, LP v. Lightpath Technologies, Inc.,
601 F.Supp.2d 537 (S.D.N.Y. 2009).................................................................8

Int'l Audiotext Network, Inc. v. AT&T Co., 62 F.3d 69, 72 (2d Cir. 1995).........................3

Kalisch-Jarcho, Inc. v. City of New York, 58 N.Y.2d 377 (Ct. App. 1983).........................6

Petro–Ventures, Inc. v. Takessian, 967 F.2d 1337, 1342 (9th Cir.1992)...........................7

San Diego Cnty. Emps. Ret. Ass'n v. Maounis, No 07 Civ. 2618 (DAB),
2010 WL 1010012 (S.D.N.Y. 2010)..................................................................4

Shearson/American Express Inc. v. McMahahon, 482 U.S. 220 (1987)...........................7

Turkish v. Kasenetz, 27 F.3d 23, 28 (2d Cir.1994)..................................................7

Defendants Metier Tribeca, LLC ("Metier" or "the Company") and Richard Blanch ("Blanch") (collectively, "Defendants") hereby submit this Reply Memorandum of Law in Support of their Motion to Dismiss the Complaint filed by Plaintiffs Le Metier Beauty Investment Partners LLC ("LMBIP") and Unattainable Beauty, LLC ("UB") (collectively, "Plaintiffs"), as follows:

## PRELIMINARY STATEMENT

Plaintiffs' opposition to Defendants' motion to dismiss (cited herein as "Opp.") asks this Court to wholly ignore the unambiguous disclaimer language contained in the three contracts at issue -- which specifically state that Plaintiffs were only relying on the representations contained in the contracts themselves in deciding to invest. Such disclaimers are enforceable in New York and for good reason.

As the contracts make clear, Plaintiffs were very specifically provided with financial statements and a highly detailed -- **ninety-three (93) page** -- business plan upon which they should have relied in deciding whether to invest. The very purpose of the disclaimers were so that investors, such as Plaintiffs, would be precluded from later arguing that they relied, not on the documents that the parties specifically agreed Plaintiffs should rely on, but on other, prior informal statements. But even assuming Plaintiffs were actually relying on prior extraneous statements, as admittedly experienced investors Plaintiffs could have easily requested that such extraneous statements be specifically included in the representations section of the contracts (the section that the parties agreed Plaintiffs would rely upon) -- but Plaintiffs failed to do so. For the reasons state herein and in Defendants' Memorandum of Law dated September 17, 2013, Plaintiffs cannot now ask the Court to ignore Plaintiffs' unambiguous disclaimer of extraneous statements made prior to their investment.

1

Realizing the merit to Defendants' argument, Plaintiffs now argue that, "**[a]lthough not pled in the Complaint**, Plaintiffs believe it necessary to respond to Defendants' argument by pointing out that the Business Plan appears to reiterate a critical misrepresentation alleged in the Complaint. Specifically, the Business Plan, referenced in Section 3.15.5 of the Purchase Agreements, includes substantially the same materially false and misleading $8.5 million sales projection for the year of 2012 that Plaintiffs allege Defendant Blanch disseminated in an October 22, 2012 e-mail to Plaintiffs." Opp. pg. 15 (emphasis added). Even assuming the underlying allegation (now pled for the first time in Plaintiff's opposition papers) to be true, leave to replead should still be denied. First, the law in New York is clear that a mere projection of a future event is not a fraud.[1] And second, even after having an opportunity to (after-the-fact) find misstatements of (then) current facts, Plaintiffs have still failed to allege with requisite specificity that any of the numbers underlying the allegedly erroneous projections were false. Plaintiffs' attempt to amend the Complaint, assuming the Court grants Plaintiffs leave to do so, would be futile.

Further, as stated below, Plaintiffs fail to even address the fact that with respect to one of the three contracts at issue, none of the Defendants made any representations whatsoever therein, **nor are any of Defendants even parties to that contract**. See, Blanch Aff., Exh. C. As such, all claims related to the contract between LMBIP and The Island Def Jam Music Group must be dismissed.

---

[1] Fraud is "not a case of prophecy and prediction of something which it is merely hoped or expected will occur in the future" Channel Master Corp. v Aluminum Ltd. Sales, 4 N.Y.2d 403, 408; 151 N.E.2d 833; 176 N.Y.S.2d 259 (1958).

2

Finally, assuming Plaintiffs' Federal claims are dismissed, Plaintiffs do not oppose Defendants' argument that this Court otherwise lacks subject matter jurisdiction. As such, the Complaint should be dismissed in its entirety.

## ARGUMENT

### I. PLAINTIFFS' FRAUD-BASED CLAIMS CANNOT BE SAVED

Plaintiffs devote almost four pages of their Opposition Brief reiterating allegations stated in the Complaint that are contradicted by the unambiguous language contained in the Purchase Agreements. However, well-settled law requires these flatly contradicted allegations to be disregarded, even in the context of a motion to dismiss. *See, e.g., Goodman Mfg. Co. v. Raytheon Co.*, No 98-2774, 1999 WL 681382, at *4 (S.D.N.Y. Aug. 31, 1999) (To the extent the documents contradict factual allegations in the pleadings, the documents control) (citing *Int'l Audiotext Network, Inc. v. AT&T Co.*, 62 F.3d 69, 72 (2d Cir. 1995). The allegations (as well as unpled argument) relevant to Plaintiffs' asserted claims are contradicted and precluded as a matter of law by the Purchase Agreements that Plaintiffs signed prior to making their investments.

For example:

| **Plaintiffs' Allegations/Arguments** | **Plaintiffs' Contractual Representations** |
|---|---|
| Plaintiffs are not "highly sophisticated" in business dealings such as those alleged in the Complaint. (Opp. at pg. 14) | "Buyer represents and warrants that it has knowledge and experience in financial and business matters, is familiar with investments of the sort that it is undertaking herein, is fully aware of the risks involved in making an investment of this type and is capable of evaluating the merits and risks of the investment." (Blanch Aff., Exhs. A-C) <br><br> "Buyer is an 'accredited investor' as such term is defined in Rule 501 of the 1933 Act." (Blanch Aff., Exh. A, Section 2.6) |

3

| | |
|---|---|
| Relying on representations made prior to -- and not included in -- the Purchase Agreements, on October 31, 2012, Plaintiffs invested several million dollars in the company. (Complaint, ¶¶ 19, 23, 24, 26, 27, 29) | "Buyer also acknowledges that it is not acquiring its Membership Interests based upon any representations, oral or written, by any person, except for those representations, warranties and covenants set forth in this Agreement and in the Operating Agreement." (Blanch Aff., Exhs. A-C) |

As in *San Diego*, Plaintiffs' express representations and disclaimers contained in the clear and unambiguous Agreements -- which, as a matter of law, trump the contradictory allegations set forth in the Complaint -- preclude their misrepresentation-based fraud claims. As a matter of law, Plaintiffs cannot allege the required element of justifiable reliance.[2]

Plaintiffs' argument that their disclaimers were too general to preclude their claims for fraud is without merit. The Agreements that govern the parties' relationships do not include a vague and general merger clause. Rather, the Agreements contain an express disclaimer of all representations external to those specifically set forth in the representations, warranties and covenants set forth therein. Such a disclaimer is sufficiently specific and clearly enforceable under New York law. Given Plaintiffs' admitted sophistication in business transactions such as those undertook herein, Plaintiffs easily could have requested that any important external "representations" actually be stated in the "representations" section of the Agreements. Plaintiffs, instead, did the opposite, and specifically disclaimed reliance on **all** external representations.

---

[2] Plaintiffs' attempt to distinguish themselves from the plaintiffs in *San Diego Cnty. Emps. Ret. Ass'n v. Maounis*, No 07 Civ. 2618 (DAB), 2010 WL 1010012 (S.D.N.Y. 2010), as well as their repeated assertions that they are not sophisticated investors, fall flat as a matter of fact and law. As stated herein, the Purchase Agreements specifically reflect Plaintiffs' high degree of sophistication and even admit that they are "accredited investors" as that term is used in the 1933 Act. *See*, Blanch Affidavit, Exhibits A -C. On that point, the Second Circuit has stated, "[b]y engaging in these private placements of complex securities, [plaintiff] is clearly a sophisticated investor." *See*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 105 (2d Cir. 2007).

4

To be sure, the only external documents that the Agreements do specifically reference (and upon which Plaintiffs could have, but obviously did not, reasonably rely upon) -- the October 1, 2012 Business Plan and the Financial Statements referenced in Sections 3.15.5 and 3.15.8 of the Agreements -- are nowhere to be found in the Complaint.[3] Further, in light of the ninety-three (93) page business plan and the financial statements admittedly received by Plaintiffs prior to their investment (which contained all relevant information about the company), Plaintiffs argument that the source of the information requested by Defendants was in the "peculiar knowledge" of Defendants, is demonstrably false.

A finding that Plaintiffs' disclaimed reliance on the very extraneous representations it now claims were fraudulent is in accord with the main case cited on the issue in Plaintiffs' Opposition, *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566 (2d Cir. 2005). First, Plaintiffs' quoted language taken from Aetna (that, "when a contract contains an 'omnibus statement' disclaiming that any representations outside the contract were made, it will not preclude a claim for fraud") (Opp. pg. 10), is misplaced. The non-reliance provisions at bar do not state that no outside representations were made. Rather, the provisions reflect the parties' agreement that Plaintiffs would not be relying on any outside representations. In any event, Plaintiffs stopped short in their citation to *Aetna*, for the Second Circuit's finding on that issue is highly relevant:

> Turning to the case at hand, I concede that the Waiver Clause in the Completion Agreement presents a close question. Nonetheless, I hold that it is sufficiently specific to fall within the ambit of *Danann*. In reaching this conclusion, I find instructive the holding of *Galvatron Industries*

---

[3] On this point, Defendants fail to offer an argument in opposition, and thus concede, that the September 30, 2012 Financial Statement referenced in Section 3.15.8 of the Agreements disclosed all of the companies' operating expenses, including but not limited to, total accounts payable, 401k payable, commissions payable, accrued payroll and accrued expenses (totaling over $2.7 million -- all of which is by definition a part of the Company's working capital). As such, Plaintiffs' allegation that Defendants misused Plaintiffs' investment funds is flatly contradicted by the documents that Plaintiffs' admittedly received prior to their investment.

5

*Corp. v. Greenberg,* 96 A.D.2d 881, 466 N.Y.S.2d 35 (2d Dep't 1983), cited by the Second Circuit in *Grumman* as an exemplar of New York law. *See* 748 F.2d at 735-36. In *Galvatron,* the Court found that a contracting party could not assert a fraud claim when it acknowledged, in the contract, that it had "full familiarity with the financial condition ... of the corporation" and generally disclaimed reliance on any representation by any signatory. 466 N.Y.S.2d at 36. Thus, **a general disclaimer that a party has relied on any representations of the other signatory, coupled with the disclaiming party's assertion of familiarity with a particular subject area, is specific enough to preclude a claim of reliance on statements falling within that topic**.

404 F.3d at 576 (emphasis added). This is precisely what occurred herein. Plaintiffs acknowledged their sophistication and experience in business dealings such as these, Plaintiffs performed an investigation of the business (which, pursuant to the contracts, included a review of the Company's financial statements and a ninety-three page Business Plan) -- Plaintiffs then disclaimed reliance on any outside representations not stated in the contracts -- and invested.

Moreover, in analyzing the issue, the Second Circuit found of particular importance the sophistication of the parties:

> [Plaintiff's] sophistication and the arms-length nature of the transaction compel application of the relaxed specificity requirements set forth in *Citibank, N.A. v. Plapinger,* 66 N.Y.2d 90, 495 N.Y.S.2d 309, 311-12, 485 N.E.2d 974 (Ct.App.1985). *See also Kalisch-Jarcho, Inc. v. City of New York,* 58 N.Y.2d 377, 461 N.Y.S.2d 746, 749, 448 N.E.2d 413 (Ct. App. 1983)(enforcement of contractual waiver clause is "especially" warranted when contract was "entered into an arms length by sophisticated contracting parties," including a "large contractor").

404 F.3d at 577. Although Plaintiffs now attempt to distance themselves from their admitted sophistication, as stated above, the contracts speak for themselves.[4] Under these circumstances, the Court should enforce the contracts that Plaintiffs signed.

---

[4] *See, supra,* chart on pg. 3.

6

Finally, Plaintiffs' argument that the non-reliance provisions in the contract constitute an unenforceable waiver of the provisions of the Exchange Act, is misleading and without any merit. Of course it is true that Section 29(a) of the Exchange Act (15 U.S.C. § 78cc(a) forbids the enforcement of "agreements to waive 'compliance' with the provisions of the [Exchange Act]" (*Shearson/American Express Inc. v. McMahahon*, 482 U.S. 220, 228 (1987). However, the contracts at issue contain no such waiver. Rather, the contracts merely codify the parties' intent that only the representations contained in the contract itself can be reasonably relied upon by Plaintiffs in deciding whether to invest. Plaintiffs were free to bring a claim under the Exchange Act to the extent they had one.[5]

But even assuming *arguendo* that the non-reliance provisions constituted an actual waiver of Plaintiffs' right to bring an action under the Exchange Act (which it does not), such a waiver would still be enforceable given the sophistication of the parties. The parties' levels of sophistication are a relevant factor in determining whether a release violates Section 29(a). *See, Petro–Ventures, Inc. v. Takessian*, 967 F.2d 1337, 1342 (9th Cir.1992) (holding that sophisticated parties could waive future securities claims without violating Section 29(a), and noting that when "a release is signed in a commercial context by parties in a roughly equivalent bargaining position and with ready access to counsel, the general rule is that, if 'the language of the release is clear, ... the intent of the parties [is] indicated by the language employed").

---

[5] Plaintiffs' case law undercuts its own argument on this issue. As stated in *Aetna*, "... the Second Circuit has clearly stated that "parties cannot use contractual limitation of liability clauses to shield themselves from liability for their own fraudulent conduct." *Turkish v. Kasenetz*, 27 F.3d 23, 28 (2d Cir.1994). This principle has been limited, however, to situations in which "the party against which the disclaimer is asserted is entirely unaware of the existence of the disclaimer," such as when it is "inserted surreptitiously into the final draft of the contract." *Grumman*, 748 F.2d at 737." 404 F.3d at 577. No such allegation is (or could be) made in the Complaint. The contracts were negotiated at arms-length by sophisticated business people and with the benefit of counsel of their choosing.

7

To be sure, the facts here are similar to those in *Harborview Master Fund, LP v. Lightpath Technologies, Inc.*, 601 F.Supp.2d 537 (S.D.N.Y. 2009). Therein, Judge Naomi Reice Buchwald dismissed federal securities claims brought by an investor pursuant to a purchase agreement. Judge Buchwald specifically held that the Court's reasoning is compatible with Section 29(a) of the Exchange Act (since no actual "waiver" existed therein) and, even more to the point, Judge Buchwald held that even if the Court were to conclude that misstatements were made, "they could not have been misleading to plaintiff, which, under the [purchase agreement], acknowledged that it was not relying upon them."

Here, Plaintiffs specifically disclaimed reliance on any statements outside of those contained in the contracts themselves -- and the Complaint fails to allege any misstatements made in the contracts. The Complaint fails to state a cause of action for violation for securities fraud.

## II. ALL CLAIMS RELATING TO THE ISLAND DEF JAM MUSIC AGREEMENT MUST BE DISMISSED

Unlike Plaintiffs' contracts directly with Defendant Metier Tribeca (i.e. Blanch Aff., Exhs. A and B), Plaintiff LMBIP's acquisition of a 12% equity interest in the Company (for $1.25 million) from a third party, The Island Def Jam Music Group, is not actionable against Defendants. In fact, none of Defendants made any representations in that contract whatsoever -- nor were Defendants even parties to that contract. *See*, Blanch Aff., Exh. C.

Accordingly, both as a matter of fact and law, LMBIP has no recourse against Defendants with respect to its contract with a third-party. The Complaint fails to state a cause of action upon which relief can be granted with respect to the LMBIP-Island Def Jam contract.

8

## III. THE REMAINING PENDANT CLAIMS MUST BE DISMISSED

While Defendants will respectfully refer the Court to the contents of Defendants' Memorandum of Law dated September 17, 2013 as to why each of Plaintiffs' pendant claims must fail, Defendants must address one argument made in opposition with respect to Plaintiffs' claim for breach of fiduciary duty.

In opposition, Plaintiffs allege that an independent fiduciary relationship existed between Plaintiffs and Defendant Blanch because: (i) "Defendant Blanch, as a managing member of Defendant Metier, has a 'statutory and common-law fiduciary duties to the members of the company"; and (ii) "prior to the execution of the Purchase Agreements, Defendant Blanch entered a relationship of higher trust with Plaintiffs by virtue of agreeing to provide due diligence information to Plaintiffs." Opp. pg. 20. Both arguments are unavailing.

First, assuming Mr. Blanch owed a fiduciary duty to one member of the company over the other members (as implicitly argued by Plaintiffs), Plaintiffs were not members of the company until after they invested. Thus, no fiduciary duty was owed to Plaintiffs prior to them becoming members of the company, which is when the alleged fraud occurred according to the Complaint. Second, while Plaintiffs summarily argue that a fiduciary duty is created every time due diligence is provided to an opposing party in a contemplated business transaction, Plaintiffs cite no authority whatsoever for such a proposition. Rather, negotiating parties to a contract must merely act with good faith and fair dealing.

For the reasons stated herein and Defendants' Memorandum of Law dated September 17, 2013, Plaintiffs' pendant claims must be dismissed.

## IV. PLAINTIFFS DO NOT CONTEST THAT, ASSUMING PLAINTIFFS' FEDERAL CLAIMS FAIL, THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

Assuming the Court dismisses Plaintiffs' Federal claims, the Court should dismiss the Complaint in its entirety for lack of subject matter jurisdiction. This argument is unopposed by Plaintiffs.

## CONCLUSION

For the reasons stated herein and in Defendants Memorandum of Law dated September 17, 2013, the Complaint should be dismissed in its entirety, and leave to replead should be denied as futile.

DATED: New York, New York
November 15, 2013

THE ROTH LAW FIRM, PLLC

By: _____
Richard A. Roth
Jordan M. Kam
295 Madison Avenue, 22nd Floor
New York, New York 10017
Tel: (212) 542-8882
*Attorneys for Defendants*