```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
LE METIER BEAUTY INVESTMENT         :
PARTNERS LLC, and UNATTAINABLE      :
BEAUTY, LLC,                        :
                                    :
                 Plaintiffs,        :
                                    :
         -against-                  :    No. 13 Civ. 4650 (JFK)
                                    :
METIER TRIBECA, LLC, and            :       OPINION & ORDER
RICHARD Blanch,                     :
                                    :
                 Defendants.        :
------------------------------------X
```

APPEARANCES

FOR LE METIER BEAUTY INVESTMENT PARTNERS LLC; UNATTAINABLE BEAUTY, LLC
    Evan T. Raciti
    Vincent Roger Cappucci
    ENTWISTLE & CAPPUCCI LLP

FOR METIER TRIBECA, LLC; RICHARD BLANCH
    Jordan Michael Kam
    Richard Alan Roth
    THE ROTH LAW FIRM, PLLC

**JOHN F. KEENAN, United States District Judge:**

    This case was automatically stayed as against Defendant Metier Tribeca, LLC (hereinafter "Metier Tribeca" or "Debtor") in accordance with Section 362(a) of the Bankruptcy Code by the filing of Metier Tribeca's petition for relief in the United States Bankruptcy Court for the Southern District of New York on February 14, 2014. See 11 U.S.C. § 362(a)(1). Plaintiffs subsequently sought discovery in this litigation from Defendant Richard Blanch ("Blanch") and other nonparties. Blanch, the former CEO of Metier Tribeca, now moves to stay the instant

action against him, claiming that (1) an identity of interest exists between Defendants such that the prosecution of the action against Blanch would create an immediate liability to the Debtor; (2) Plaintiffs' discovery requests attempt to inappropriately circumvent the automatic stay and the intention of the bankruptcy court; and (3) Blanch would suffer severe prejudice if the stay is denied, because he will be unable to obtain documents from the Debtor needed for his defense.  For the reasons that follow, Blanch's motion is denied.

### I. Background

#### A. The Parties

Plaintiffs Le Metier Beauty Investment Partners LLC ("Le Metier") and Unattainable Beauty LLC ("Unattainable") commenced this action on July 3, 2013, when they filed a complaint alleging securities fraud under section 10(b) of the Exchange Act and Rule 10b-5, common law fraud, and fraudulent inducement with respect to both Defendants; violation of section 20(a) of the Exchange Act and breach fiduciary duties against Blanch; and breach of contract against Metier Tribeca.

The complaint states that Le Metier invested $3.05 million and Unattainable invested $2.175 million in Metier Tribeca in October 2012.  Plaintiffs allege that they based their investments on contractual agreements and explicit representations by Blanch and Metier Tribeca that Metier Tribeca

2

had millions of dollars in projected sales and anticipated orders and that the money would be used for the sole purpose of funding Metier Tribeca's capital requirements and would not be used to repay existing company debt. (Compl. ¶¶ 1, 26.)  Despite these representations, Plaintiffs allege that Defendants used over 80 percent of the investment to pay, inter alia, aged debt and back salary, including $395,000 transferred to Blanch's and other insiders' bank accounts; that Blanch altered Metier Tribeca's books and records to conceal the fraud; and that Metier Tribeca took out a loan without fulfilling the conditions required by Plaintiffs in exchange for their consent. (Id. ¶¶ 6, 33–35.)

### B. Procedural History

Defendants filed a motion to dismiss the Complaint on September 17, 2013, which was fully briefed and filed with the Court on November 15, 2013. (ECF No. 12.)  On February 14, 2014, while the motion to dismiss was pending, Metier Tribeca filed their petition for relief under Chapter 11. (ECF No. 18.)  A Notice of Bankruptcy Filing and Automatic Stay was subsequently filed in this litigation on February 18, 2014. (Id.)

Plaintiffs filed a notice of appearance in the bankruptcy court on February 24, 2014 and subsequently made several unsuccessful attempts to compel the production of documents by the Debtor, Blanch, and other nonparties as part of the

bankruptcy proceeding. (ECF No. 24 at 4.)  On March 14, 2014 the bankruptcy court ordered the appointment of a Trustee, who replaced Blanch as manager of Debtor, and on May 22, 2014 the court approved the sale of substantially all of Debtor's assets. (Id. at 4; ECF No. 27 at 7.)  In its May 22 order, the bankruptcy court explicitly noted that "nothing herein grants [Plaintiffs] or any other party relief from the automatic stay to pursue claims against the Trustee or the [Debtor's] estate." (ECF No. 24 at 5.)  That same day, Plaintiffs served document requests on Blanch and other nonparties in this action. (Id.)

On June 6, 2014, the Trustee sent a letter to Plaintiffs, stating his position that the documents sought "are exclusively the property of the Debtor's estate," and that further attempts to obtain the Debtor's records or property would "be met with a motion by the Trustee in the Bankruptcy Court to hold plaintiffs in contempt of the automatic stay." (Id. at 6; ECF No. 27 at 7.) On June 17, 2014, Plaintiffs sent a letter to this Court requesting that the Court continue its consideration of the motion to dismiss with respect to Blanch. (ECF No. 27 at 9.) Finally, on June 19, 2014, Blanch responded with a letter to the Court requesting leave to file a motion to stay these proceedings.

4

**II.   Discussion**

**A. Legal Standard**

This Court possesses independent statutory authority to determine whether the automatic stay issued in the Debtor's bankruptcy proceeding should be extended to Plaintiffs' action against Blanch. 28 U.S.C. § 1334(b); see In re Baldwin-United Corp. Litig., 765 F.2d 343, 347 (2d Cir. 1985).

Section 362(a) of the Bankruptcy Code provides for an automatic stay of "proceeding[s] against the debtor" upon the filing of a petition under Chapter 11. § 362(a)(1).  Generally, the scope of the stay extends only to the debtor and does not give shelter to nondebtor codefendants or third parties.  See Residential Capital, LLC v. Fed. Hous. Fin. Agency, No. 12 Civ. 5116, 2013 WL 4056195, at *1 (S.D.N.Y. Aug. 12, 2013).  A narrow exception may be available, however, where "unusual circumstances" bind the interests of the debtor and nondebtor so that "a judgment against the [nondebtor] defendant will in effect be a judgment or finding against the debtor." See A.H. Robins Co. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986).

The crux of this exception, as articulated by the Second Circuit in Queenie, Ltd. v. Nygard International, is whether there are "strong ties" between the nondebtor and the debtor such that a judgment against the nondebtor "will have an immediate adverse economic consequence for the debtor's estate"

or the liability of the nondebtor will be imputed to the debtor by operation of law. 321 F.3d 282, 287 (2d Cir. 2003); see also Robert Plan Corp. v. Liberty Mut. Ins. Co., No. 09 Civ. 1930, 2010 WL 1193151, at *3 (E.D.N.Y. Mar. 23, 2010); DeSouza v. Plusfunds Grp., Inc., No. 05 Civ. 5990, 2006 WL 2168478, at *2 (S.D.N.Y. Aug. 1, 2006).  Courts should also consider whether such an extension "would work a hardship on plaintiffs, by giving an unwarranted immunity from suit to solvent co-defendants." CAE Indus. Ltd. v. Aerospace Holdings Co., 116 B.R. 31, 32 (S.D.N.Y. 1990).

In order for the unusual circumstances exemption to be warranted, however, the purpose served by extending the automatic stay to a nondebtor must also be consistent with the purpose of the stay itself. Gray v. Hirsch, 230 B.R. 239, 243 (S.D.N.Y. 1999).  As courts within the Second Circuit have recognized, the automatic stay under Section 362(a) is intended to "permit the debtor to organize his or her affairs without creditor harassment and to allow orderly resolution of all claims." CAE Indus. Ltd., 116 B.R. at 32.  Therefore, while courts in the Southern District have extended the automatic stay to nondebtor officers and principals of debtor corporations, they have done so "only where the stayed actions would have posed a serious threat to the debtors' reorganization efforts" or otherwise inhibited resolution of the debtor's bankruptcy.

6

See Gray, 230 B.R. at 243; accord In re Uni-Marts, LLC, 404 B.R. 767, 781 (Bankr. D. Del. 2009).  The movant bears the burden of demonstrating the need for such a stay.  See LaSala v. Needham & Co., Inc., 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005).

### C. Analysis

Blanch argues that a stay of these proceedings under Section 362(a) is appropriate and necessary because the complaint inextricably intertwines the identities of Blanch and the Debtor.  In support of this position, Blanch makes two assertions:  (1) that the claims against him clearly arise out of actions taken in his capacity as Debtor's officer and (2) that he is "undisputedly" entitled to indemnification, such that any claims against him create an immediate liability for the Debtor.  Blanch therefore contends that sufficiently "strong ties" exist between himself and the Debtor so as to warrant the application of the "unusual circumstances" exception set out in A.H. Robins and applied by courts in the Second Circuit.  See Queenie, 321 F.3d at 282, 87; In re Saint Vincents Catholic Med. Ctrs. of N.Y., 449 B.R. 209, 214 (S.D.N.Y. 2011).

### 1. The Unusual Circumstances Exception

Blanch has not established that his liability would be derivative of his former status as the Debtor's officer or that he has an absolute right to indemnification, such that a judgment against him would create an immediate adverse

7

consequence for the Debtor. See Cano v. DPNY, Inc., 287 F.R.D. 251, 261-62 (S.D.N.Y. 2012).  First, claims based upon a corporate officer's personal actions are direct and not derivative in nature. See CAE Indus. Ltd., 116 B.R. at 33-34.  Second, although New York law allows a corporation to indemnify an officer for actions undertaken in the scope of his employment, indemnification is not allowed where the actions of the officer were undertaken in bad faith, "were the result of active and deliberate dishonesty," or where the officer gained "a financial profit or other advantage to which he was not legally entitled." N.Y. Bus. Corp. Law §§ 721-722.  Courts in the Second Circuit have therefore declined to extend the automatic stay where a nondebtor officer is alleged to have acted in bad faith, where his liability could rest upon his own breach of duty, or where the officer can be held "jointly and severally liable." See JSO Assocs., Inc. v. Awrey Bakeries, LLC, No. 13 Civ. 6035, 2014 WL 2882896, at *2 (E.D.N.Y. June 25, 2014); Cano, 287 F.R.D. at 261-62; DeSouza, 2006 WL 2168478, at *3; CAE Indus. Ltd., 116 B.R. at 33-34; see also A.H. Robins, 788 F.2d at 999 (recognizing prior precedent that "the automatic stay would clearly not extend" to a nondebtor defendant that was "independently liable" (internal quotation marks omitted)); c.f. Robert Plan Corp., 2010 WL 1193151, at *3 (noting that the debtor-company had preemptively pledged to indemnify the

8

nondebtor officers based on the board's finding of good faith).

Here, the complaint specifically seeks to hold Blanch jointly and severally liable and explicitly asserts claims based on Blanch's personal actions while CEO of Debtor, including allegations that Blanch made deliberately false statements to Plaintiffs, altered company records, and gained a financial profit by using Plaintiffs' loan to transfer hundreds of thousands of dollars from Metier Tribeca to his personal bank account. (ECF No. 1 at 14-21.)  Therefore, as currently pled, the claims against Blanch are not derivative of his former role as an officer of the Debtor because Plaintiffs seek to hold Blanch directly liable on the basis of his personal actions. Similarly, Blanch cannot claim an absolute right to indemnification because Plaintiffs allege that his statements were deliberately dishonest and that he improperly gained a financial benefit.  Consequently, neither Blanch's former role as an officer of the Debtor nor the possibility that he may be indemnified by the Debtor are sufficient bases upon which to extend the automatic stay.

Furthermore, extending the automatic stay to Blanch would not serve the underlying purpose of Section 362(a), because continuation of this action against Blanch does not seriously threaten resolution of the Debtor's bankruptcy proceeding.  A serious threat has been found to exist where a debtor is

9

undergoing reorganization and either the nondebtor is a necessary party in the reorganization or the nondebtor's liability would be imputed to the debtor by operation of law. See In re Uni-Marts, LLC, 404 B.R. at 780-81 (recognizing that extension of a stay may be warranted where the nondebtor is entitled to "absolute indemnification" by the debtor); DeSouza, 2006 WL 2168478, at *2 (noting that the automatic stay may be extended where the nondebtor is a "principal player" in the debtor's reorganization process). By comparison, potential harm from the possible precedential effect of a ruling against a nondebtor codefendent has not, on its own, been found to pose a serious threat to the debtor's bankruptcy proceeding. See Queenie, 321 F.3d at 288; Trustees of the Sickness and Accident Fund of Local One-L v. Philips Winson, Inc., No. 00 Civ. 9554, 2005 WL 273017, at *2 (S.D.N.Y. Feb. 3, 2005).

Blanch cannot plausibly claim to be a "principal player" in Debtor's bankruptcy proceedings because he is no longer a manager or employee of Debtor. (ECF No. 27 at 14.) See, e.g., DeSouza, 2006 WL 2168478, at *2 (concluding that a nondebtor was not a principal player in a debtor's reorganization where the nondebtor defendant had provided "no support whatsoever for either his role in reorganization or any role as a director" of the debtor). Likewise, even if Blanch could establish an absolute right to indemnification, allowing Plaintiffs to

10

continue their action against Blanch cannot pose a serious threat to the Debtor's reorganization efforts because there is no reorganization to threaten. See In re Pitts, No. 808-74860, 2009 WL 4807615, at *6 (Bankr. E.D.N.Y. Dec. 8, 2009).  Instead, Debtor's operating assets have been liquidated. (ECF No. 27 at 13.)  Although a claim by Blanch for indemnification "might lessen the overall percentage of a pro rata distribution to creditors, such distributive adjustment does not damage the [Debtor's] estate." In re First Cent. Fin. Corp., 238 B.R. 9, 20 (Bankr. E.D.N.Y. 1999) (declining to extend a stay where there was no threat of mass litigation, there was no reorganization, and there was "no discernable harm" if the nondebtor subsequently filed a claim for indemnification); see also Uto v. Job Site Servs., Inc., 444 B.R. 222, 224 (E.D.N.Y. 2011).

### 2. The Availability of Discovery from the Debtor

Finally, while it would violate the automatic stay provided by Section 362(a) for Plaintiffs to subpoena the Debtor in its capacity as a party-defendant in this proceeding, Section 362(a) does not prevent litigants from obtaining discovery from a debtor as a third-party witness where the requests pertain to claims against the nondebtor parties. See In re Residential Capital, LLC, 480 B.R. 529, 536 (Bankr. S.D.N.Y. 2012).  Such discovery has been allowed even where the information sought might later be used against the debtor. See In re Miller,

11

262 B.R. 499, 505-06 (B.A.P. 9th Cir. 2001); see also In re Kenoyer, 489 B.R. 103, 121 (Bankr. N.D. Cal. 2013) (citing Miller for the proposition that subpoenaing third-party testimony from a debtor "is permitted even if the elicited information could later be used against the debtor—as long as the debtor is compelled to testify for purposes other than prosecuting claims against the debtor"); In re Residential Capital, 480 B.R. at 536-37 (discussing Miller and concluding "that section 362(a) does not, standing alone, protect the [d]ebtors from discovery in third-party actions.")  For this reason, Plaintiffs' discovery requests do not inappropriately circumvent the stay provided by Section 362(a), and neither Plaintiff nor Blanch are precluded by the automatic stay from seeking third-party discovery from the Debtor.

Instead, in situations where third-party discovery of a debtor could burden the bankruptcy proceeding, courts have generally placed the onus on the debtor to seek injunctive relief, rather than requiring the party requesting discovery to obtain a lift of the bankruptcy stay. See In re Kenoyer, 489 B.R. at 114, 121 (acknowledging the "generally accepted view [that Section 362(a)] does not prevent third-party discovery from a debtor which is directed to the claims asserted against non-debtor parties," but noting that "the bankruptcy court has the power under § 105(a) to prevent such discovery, when such

12

relief is affirmatively requested.") Section 105 provides bankruptcy courts with discretion to extend the scope of the automatic stay beyond the limits of Section 362(a) where "necessary or appropriate" to prevent significant interference with the bankruptcy proceeding. 11 U.S.C. § 105; In re Residential Capital, 480 B.R. at 536 (noting that "[s]ection 105 provides the [c]ourt with the necessary authority to extend the protection of the automatic stay to discovery"). Therefore, this Court's decision not to extend the automatic stay under Section 362(a) does not preclude the bankruptcy court from providing relief under Section 105 if such relief is necessary to protect Debtor's bankruptcy proceeding.

### III. Conclusion

Defendant Blanch's motion to extend the automatic stay under Section 362(a) is denied. The action is stayed for fourteen (14) days to allow parties the opportunity to seek appropriate relief from the bankruptcy court. If such relief is not sought by that time, or is subsequently denied, this Court

will proceed to consider the pending motion to dismiss with respect to Blanch.

**SO ORDERED.**

Dated:   New York, New York
         September 25, 2014

                                   John F. Keenan
                                   United States District Judge