**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------X
LE METIER BEAUTY INVESTMENT       :
PARTNERS LLC, and UNATTAINABLE    :
BEAUTY, LLC,                      :
                                  :
                 Plaintiffs,      :
                                  :
        -against-                 :    No. 13 Civ. 4650 (JFK)
                                  :
METIER TRIBECA, LLC, and          :    **OPINION & ORDER**
RICHARD BLANCH,                   :
                                  :
                 Defendants.      :
-----------------------------------X

┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____          │
│ DATE FILED: February 24, 2015    │
└─────────────────────────────────┘

<u>APPEARANCES</u>
FOR LE METIER BEAUTY INVESTMENT PARTNERS LLC and UNATTAINABLE
BEAUTY, LLC
     Vincent Roger Cappucci
     Evan T. Raciti
     ENTWISTLE & CAPPUCCI LLP

FOR METIER TRIBECA, LLC and RICHARD BLANCH
     Richard Alan Roth
     Jordan Michael Kam
     THE ROTH LAW FIRM, PLLC

**JOHN F. KEENAN, United States District Judge:**

     Before the Court is a motion by Defendant Richard Blanch

seeking to dismiss the complaint under rule 12(b)(6) of the

Federal Rules of Civil Procedure.[1]  For the reasons that follow,

the motion is denied.

---

[1] This motion was originally filed jointly by Blanch and
Defendant Metier Tribeca, LLC ("Metier" or "the Company").  The
present action was subsequently stayed as against Metier,
however, after the Company filed a petition for relief in the
U.S. Bankruptcy Court for the Southern District of New York on
February 14, 2014. (ECF No. 18.)

## I. Background

The following facts are taken from the allegations in the complaint and are accepted as true only for purposes of the motion to dismiss.  Beginning around February 2012, Plaintiff Unattainable Beauty, LLC extended credit to Metier Tribeca ("Metier" or "the Company") in the aggregate principal amount of $1.85 million. (Compl. ¶ 16.)  By the summer of 2012, however, the Company informed Unattainable Beauty that its line of credit was exhausted.  As a result, beginning in August 2012, Plaintiffs Le Metier Beauty Investment Partners LLC ("Beauty Investment Partners") and Unattainable Beauty entered into a series of discussions with Metier concerning the possibility of their acquiring a membership interest in the Company in exchange for a further investment. (Id. ¶ 17.)  Prior to these discussions, Beauty Investment Partners had no relationship with Metier. (Id. ¶ 16.)

As the then-CEO of Metier, Blanch interacted with Plaintiffs on behalf of the Company during these discussions. In his communications with Plaintiffs, Blanch allegedly stated that Metier had "$1.5MM in November orders" and "would ship $8.5 million by year-end 2012." (Id. ¶ 26-27.)  Plaintiffs also assert that Blanch informed them that Metier's books and records were being "reconciled" and, as a result, the latest sales figures could not be provided to Plaintiffs for their review

2

"until post investment." (Id. ¶ 27-28.)  Finally, Blanch is also alleged to have guaranteed that any investment that Plaintiffs made in Metier would be used to fund growth and not to pay Company insiders or preexisting debt beyond a single scheduled exception. (Id. ¶ 18-19, 23.)

On October 31, 2012, Plaintiff Beauty Investment Partners entered into an LLC Company Membership Interest Purchase Agreement (the "Beauty Investment Partners Agreement") with Metier, pursuant to which it acquired a 10 percent interest in the Company in exchange for $1.8 million. (Id. ¶ 32.)  That same day, Unattainable Beauty entered into a separate LLC Company Membership Interest Purchase Agreement (the "Unattainable Beauty Agreement" and, together with the Beauty Investment Partners Agreement, the "Purchase Agreements") by which it paid $2,175,070 to acquire a 14.53 percent interest in the Company. (Id. ¶ 32.)  In addition, Beauty Investment Partners simultaneously acquired an additional 12 percent equity interest in Metier for $1.25 million from a third party—The Island Def Jam Music Group. (Id.; Def. Reply at 11.)

Section 1.6 of both Purchase Agreements included a representation that Metier would

> "use the proceeds from the sale of the Membership
> Interests solely to fund the working capital
> requirements of the Company and/or to retire debt set

forth in Exhibit 1.6, such debt not to exceed

$350,000.  Such proceeds may not be used for any other

purpose unless otherwise agreed to by buyer."

(Id. ¶ 20(emphasis omitted).)  Moreover, the Unattainable Beauty

Agreement also contained a further representation that,

"[u]nless scheduled in section 1.6 for retirement, no other

existing debt shall be paid prior to its Maturity Date or

December 31, 2013, whichever is later." (Id. ¶ 21.)

On July 3, 2013, Plaintiffs commenced this action when they

filed a complaint asserting claims for securities fraud under

section 10(b) of the Securities Exchange Act of 1934 (the

"Exchange Act") and rule 10b-5 promulgated thereunder, common

law fraud, and fraudulent inducement with respect to Blanch and

Metier; violation of section 20(a) of the Exchange Act and

breach of fiduciary duty against Blanch; and breach of contract

against Metier.  Plaintiffs' allegations include that, despite

explicit representations by Blanch to the contrary, over 80

percent of Plaintiffs' investment was used to pay aged debt,

back salary, and other prohibited expenses, including more than

$250,000 transferred to Blanch and other insiders at the Company

within twenty-four hours of Plaintiffs' investment being made.

(Id. ¶¶ 33-35.)  Plaintiffs also allege that Blanch knew that

actual sales numbers were significantly lower than what was

represented to Plaintiffs and that, in any event, Metier had

4

insufficient inventory to fill even those orders that had been placed. (Id. ¶ 27-30.)

On February 14, 2014, this case was automatically stayed as against Metier in accordance with section 362(a) of the Bankruptcy Code, following Metier's filing of a petition for relief in the U.S. Bankruptcy Court for the Southern District of New York. See 11 U.S.C. § 362(a)(1). On June 17, 2014, Plaintiffs sent a letter to this Court requesting consideration of Defendants' motion to dismiss with respect to Blanch alone. (ECF No. 27 at 9.) Blanch subsequently moved to extend the bankruptcy stay in order to preclude Plaintiffs from continuing the action against him individually.

On September 25, 2014, the Court denied Blanch's motion to extend the automatic stay, but granted a temporary stay of fourteen days to allow the parties to seek an extension of the stay from the bankruptcy court. The Court noted that, if further relief was not sought, it would proceed to consider the motion to dismiss with respect to Blanch alone. Although the bankruptcy action remains pending as of the date of this order, no further efforts have been made to extend the stay to Blanch.

## II. Discussion

### A. Jurisdiction

As an initial matter, the Court possesses subject matter jurisdiction to address Plaintiffs' federal securities law

5

claims pursuant to section 27 of the Exchange Act. <u>See</u> 15 U.S.C.
§ 78aa.  Section 27 provides federal district courts with
exclusive jurisdiction over claims brought under the Exchange
Act. <u>Id.</u>  Moreover, the Court also possesses supplemental
jurisdiction to decide Plaintiffs' state law claims, as they
form part of the same case or controversy as Plaintiffs' federal
law claims. <u>See</u> 28 U.S.C. §§ 1331 and 1367.

## B. Legal Standard

A motion to dismiss should be denied so long as the
complaint "contain[s] sufficient factual matter, accepted as
true, to 'state a claim to relief that is plausible on its
face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting
<u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).
Accordingly, in addressing a 12(b)(6) motion, a court must
accept the plaintiff's allegations of fact as true and draw all
reasonable inferences in the plaintiff's favor. <u>See</u> <u>Ganino v.</u>
<u>Citizens Utils. Co.</u>, 228 F.3d 154, 161 (2d Cir. 2000); <u>Fed.</u>
<u>Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.</u>, No. 14
Civ. 712, 2014 WL 4207133, at *4 (S.D.N.Y. Aug. 25, 2014).

## C. Plaintiffs' Fraud-Based Claims

Plaintiffs assert three fraud-based claims against Blanch:
(1) securities fraud under section 10(b) of the Exchange Act and
rule 10b-5, (2) New York common law fraud, and (3) fraudulent
inducement.  In order to state a claim for securities fraud

under section 10(b) and rule 10b-5, the complaint must plead
facts showing that the Defendant "(1) made misstatements or
omissions of material fact; (2) with scienter; (3) in connection
with the purchase or sale of securities; (4) upon which
plaintiffs relied; and (5) that plaintiffs' reliance was the
proximate cause of their injury." In re IBM Corporate Sec.
Litig., 163 F.3d 102, 106 (2d Cir. 1998); see also San Diego
Cnty. Emps. Ret. Ass'n v. Maounis, 749 F. Supp. 2d 104, 119
(S.D.N.Y. 2010).  The elements of common law fraud and
fraudulent inducement under New York law are "substantially
identical to those governing Section 10(b)," such that the same
analysis applies. See Sawabeh Info. Servs. Co. v. Brody, 832 F.
Supp. 2d 280, 297-98 (S.D.N.Y. 2011).

    Blanch's motion to dismiss appears to challenge the first
and fourth elements of Plaintiffs' fraud-based claims.
Specifically, Blanch contends that the allegations in the
complaint are insufficient to sustain any of Plaintiffs' fraud-
based claims because (1) Plaintiffs "specifically and
contractually" disclaimed reliance on the external
representations at issue and (2) that, in any case, Plaintiffs'
alleged reliance on external representations was unreasonable in
light of information provided to Plaintiffs as part of the
Purchase Agreements. (Def. Mem. at 9-13.)  Moreover, Blanch
asserts that Plaintiffs' fraud-based claims are duplicative of

7

their breach of contract claim.  Finally, Blanch argues that the complaint fails to state a claim for fraudulent inducement.

### 1. Plaintiffs' Reliance on External Representations

In order to state a claim for fraud, whether framed as one for securities fraud under section 10(b) and rule 10b-5, New York common law fraud, or fraudulent inducement, Plaintiffs must show "reasonable reliance on the alleged misrepresentations and omissions." Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc., 343 F.3d 189, 195 (2d Cir. 2003); Frati v. Saltzstein, No. 10 Civ. 3255, 2011 WL 1002417, at *3 (S.D.N.Y. Mar. 14, 2011). The reasonableness of a plaintiff's reliance on alleged misrepresentations is an "intensely fact-specific inquiry and [is] generally considered inappropriate for determination on a motion to dismiss." Doehla v. Wathne Ltd., Inc., No. 98 Civ. 6087, 1999 WL 566311, at *10 (S.D.N.Y. Aug. 3, 1999).  As a result, where "the reasonableness of reliance depends upon factual determinations that are not plain from a review of the complaint and its attachments," a court should generally refrain from granting a motion to dismiss on that ground. See id. at *12; see also JP Morgan Chase Bank v. Winnick, 350 F. Supp. 2d 393, 413 (S.D.N.Y. 2004) (noting that the question of whether a lender's "reliance was reasonable or justifiable is a factual question inappropriate for summary adjudication.")

### i. Non-Reliance Disclaimer

Blanch moves to dismiss Plaintiffs' fraud-based claims on the ground that these claims are preluded as a matter of law by non-reliance clauses contained in the Purchase Agreements. (Def. Mem. at 9-12.)  Article II of both agreements contain disclaimers stating:

> "Buyer represents and warrants that it has knowledge and experience in financial and business matters, is familiar with investments of the sort that is undertaken herein, is fully aware of the risks involved in making an investment of this type and is capable of evaluating the merits and risks of this investment.  Buyer also acknowledges that it is not acquiring its Membership Interests based upon any representation, oral or written, by any person, except for those representations, warranties and covenants set forth in this Agreement and in the Operating Agreement."[2]

(Blanch Aff. Ex. A, at 4 (emphasis added); id. Ex. B, at 4 (same)).  Blanch asserts that this contractual language prohibits Plaintiffs from alleging that they reasonably relied

---

[2] A similar clause is also included in Plaintiffs' agreement with Island Def Jam Music. (Id. at 7.)

upon external representations in entering into the Purchase
Agreements. (Def. Mem. at 7.)

The mere existence of a non-reliance clause, however, does
not automatically render a plaintiff's reliance on external
representations unreasonable; rather, courts have consistently
found that a disclaimer is "enforceable only if it tracks the
substance of the alleged misrepresentation." See Caiola v.
Citibank, N.A., 295 F.3d 312, 330 (2d Cir. 2002) (internal
quotations omitted).  By comparison, general disclaimer language
is ineffective to preclude a fraud claim as a matter of law. See
Danann Realty Corp. v. Harris, 5 N.Y.2d 317, 320 (1959).  In
order for Plaintiffs' fraud-based claims to be barred,
therefore, Defendant must show that the non-reliance clauses at
issue are "adequately specific"—meaning that they contain
"explicit disclaimers" of the "particular representations" that
form the basis of Plaintiffs' fraud claims. See Int'l Motor
Sports Grp., Inc. v. Gordon, No. 98 Civ. 5611, 1999 WL 619633,
at *6 (S.D.N.Y. Aug. 16, 1999); accord Transit Rail, LLC v.
Marsala, No. 05 Civ. 564, 2007 WL 2089273, at *10 (W.D.N.Y. July
20, 2007).

Here, however, Defendants have failed to show that the non-
reliance clauses contained in the Purchase Agreements track the
substance of Blanch's alleged misrepresentations with any
specificity. Compare Transit Rail, 2007 WL 2089273, at *10

(concluding that language prohibiting plaintiff from "relying upon any representations other than those contained herein" constituted a general disclaimer); with Danann Realty Corp. v. Harris, 5 N.Y.2d 317, 320 (1959) (holding that a disclaimer was adequately specific to bar plaintiff's fraud claims because plaintiff had "stipulated that it [was] not relying on any representations as to the very matter as to which it now claims it was defrauded"). Plaintiffs allege that Blanch made material misrepresentations concerning the present and projected financial condition of the Company, the availability of financial information, and the intended use of Plaintiffs' investment funds. (Compl. ¶ 18-28.) By comparison, the language in the Purchase Agreements merely disclaims reliance upon "any representations, oral or written, by any person, except for those representations, warranties and covenants set forth" in the Purchase Agreements. (Def. Mem. at 11.) Without more, this language constitutes only a general declaimer that does not preclude Plaintiffs' fraud-based claims as a matter of law.

### ii. The Business Plan and Purchase Agreements

Defendant also contends that Plaintiffs' alleged reliance on external representations was unreasonable in light of information provided to Plaintiffs as part of the Purchase Agreements, which included a detailed business plan and audited financial statements for 2010 and parts of 2012. According to

Blanch, these documents provided accurate descriptions of the
Company's existing liabilities and capital requirements,
including total accounts payable, 401K payable, as well as
payroll and other employee-owed debts.[3]  Blanch further asserts
that these expenses "necessarily form a part of the Company's
working capital," as envisioned under the Purchase Agreements,
and were "indisputably disclosed to the Plaintiffs." (Def. Mem.
at 13.)

     As noted above, however, the general rule is that
"[q]uestions of the reasonableness of reliance raise issues of
fact that must be resolved at trial." See MTV Networks v. Curry,
867 F. Supp. 202, 207 (S.D.N.Y. 1994); see also Doehla, 1999 WL
566311, at *10-11 (concluding that dismissal on reasonable
reliance grounds was inappropriate where facts relevant to the
reasonableness inquiry were "not conceded or clear beyond
doubt").  To this end, Plaintiffs contend that their reliance on
Blanch's external representations was reasonable, despite any
information provided to them as part of the Purchase Agreements,
because the Agreements clearly contemplate Metier's making of

---

[3] Although not directly addressed in the complaint, the Court
notes that Plaintiffs dispute the accuracy of the information
provided in Metier's business plan.  For instance, Plaintiffs'
opposition brief contends that the business plan "includes
substantially the same materially false and misleading $8.5
million sales projection for the year of 2012 that Plaintiffs
allege Defendant Blanch disseminated in an October 22, 2012 e-
mail to Plaintiffs." (Pls. Mem. at 21.)

and Plaintiffs' reliance upon external representations. (Pls.
Mem. at 18.)  For instance, the Purchase Agreements include an
acknowledgment that Plaintiffs were given "the opportunity to
ask questions of and to receive answers from the Managers of the
Company . . . relative to the Company and the Buyer's Membership
Interests [and] necessary to verify the accuracy of any
information, document, books and records." (Id.)  The Agreements
also include "disclosure" clauses certifying that the Company
"has fully provided each Investor with all the information that
such Investor has requested for deciding whether to purchase the
Membership Interests." (Id.)

        Therefore, accepting the Plaintiffs' allegations of fact as
true and drawing all reasonable inferences in their favor,
Blanch has not demonstrated that all facts relevant to the
reasonableness inquiry are "conceded or clear beyond doubt."
Doehla, 1999 WL 566311, at *11; see also JP Morgan, 350 F. Supp.
2d at 413 (noting that "the question of what a sophisticated
lender should have done when faced with the available
information is one about which reasonable people could easily
differ").  Thus, dismissal on the basis of unreasonable reliance
is inappropriate at this stage of the proceedings.

## 2. Fraud Claims Are Not Duplicative

        Blanch asserts that Plaintiffs' fraud claims should also be
dismissed as duplicative of their breach of contract claim.

(Def. Mem. at 14-15.)  As an initial matter, the Court notes that Plaintiffs' breach of contract claim is made only against Metier and is currently stayed because of the bankruptcy proceeding.  It is therefore uncertain whether dismissal would be appropriate even if Plaintiffs' fraud claims were duplicative.  Cf. Joyce v. Thompson Wigdor & Gilly LLP, No. 06 Civ. 15315, 2008 WL 2329227, at *15 (S.D.N.Y. June 3, 2008) (noting plaintiffs' contention that duplicative claims should be preserved because the primary claim might not survive, but granting dismissal because no independent basis for the duplicative claims was alleged).  However, this issue need not be resolved because dismissal is inappropriate in any case.

Under New York law, a plaintiff cannot maintain a cause of action for fraud if it arises out of the same facts as the plaintiff's breach of contract claim and only adds an allegation that the "defendant never intended to perform" the promises in the contract.  See Telecom Int'l Am., Ltd. v. AT&T Corp., 280 F.3d 175, 196 (2d Cir. 2001); Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc., 873 F. Supp. 2d 162, 197 (S.D.N.Y. 2011).  Parallel fraud and contract claims are permissible, however, where the plaintiff points to "a fraudulent misrepresentation that is collateral or extraneous to the contract."  See CCM Rochester, Inc. v. Federated Investors, Inc., No. 14 Civ. 3600, 2014 WL 6674480, at *4 (S.D.N.Y. Nov.

25, 2014); see also Sofi Classic S.A. de C.V. v. Hurowitz, 444
F. Supp. 2d 231, 244-46 (S.D.N.Y. 2006) (concluding that
allegations that the defendants failed to disclose material
facts and made fraudulent misrepresentations were not
duplicative of plaintiff's breach of contract claim).

For instance, New York courts have distinguished between
promissory statements as to what will be done in the future—
which give rise only to a breach of contract claim—and false
representations of present fact—which create a separable claim
of fraudulent inducement. See Stewart v. Jackson & Nash, 976
F.2d 86, 88-89 (2d Cir. 1992); see also Saleemi v. Pencom Sys.
Inc., No. 99 Civ. 667, 2000 WL 640647, at *4 (S.D.N.Y. 2000)
(noting that a "valid fraud claim may be premised on
misrepresentations that were made before the formation of the
contract and that induced the plaintiff to enter the contract"
(internal quotation marks omitted)).

Here, the complaint alleges that "Defendants knowingly
misrepresented, inter alia, their total orders 'in-hand,' [and]
the status of current inventory . . . for the purpose of
inducing Plaintiffs' entry into investment agreements with the
Company." (Compl. ¶ 58.)  Similarly, the complaint alleges that
Blanch informed Plaintiffs that he was unable to provide them
with the Company's September 2012 sales totals "until post
investment," despite having access to biweekly automated reports

15

summarizing the Company's current orders, sales totals, and inventory. (Id. ¶ 27-28.)  Therefore, because the complaint alleges misrepresentations that are collateral or extraneous to the Purchase Agreements and alleges that Plaintiffs were induced to enter into those agreements by fraudulent representations of present fact, Plaintiffs' fraud claims are not duplicative of their contract claims.

### 3. Fraudulent Inducement

Finally, Defendant also moves for dismissal of Plaintiffs' fraudulent inducement claim on the ground that Blanch's alleged misrepresentations are non-actionable statements of future intention.  Under New York law, a plaintiff must allege an intent to deceive and knowledge of the falsity of a present fact in order to state a claim for fraudulent inducement. See Rojas v. Don King Prods., Inc., 11 Civ. 8468, 2012 WL 760336, *4 (S.D.N.Y. Mar. 6, 2012).  By comparison, false statements of intention or representations that are mere expressions of opinion of present or future expectations are insufficient to give rise to a claim for fraudulent inducement. See Selinger Enters., Inc. v. Cassuto, 50 A.D.3d 766, 768 (N.Y. App. Div. 2008); Crossland Sav. V. SOI Dev. Corp., 166 A.D. 2d 495, 495 (N.Y. App. Div. 1990).

As discussed above, however, the complaint clearly includes allegations that Blanch materially misrepresented present facts,

such as the number of the Company's total orders "in-hand," the current status of its inventory, and the existence of outstanding debt obligations, in order to induce Plaintiffs to enter into the Purchase Agreements. (Compl. ¶ 58.) Consequently, the complaint contains sufficient allegations to state a claim for fraudulent inducement against Blanch.

### D. Plaintiffs' Section 20(a) Claim

Blanch also moves to dismiss Plaintiffs' claim for violation of section 20(a) of the Exchange Act, on the basis that the complaint fails to properly allege a primary violation of the securities laws by a controlled person. See In re Smith Barney Transfer Agent Litig., 884 F. Supp. 2d 152, 165-66 (S.D.N.Y. 2012) (noting that, in order to state a prima facie claim under section 20(a), a plaintiff must adequately alleged: "(1) a primary violation by a controlled person; (2) control of the primary violator by the defendant; and (3) that the controlling person was in some meaningful sense a culpable participant in the primary violation").

Here, however, the complaint plainly alleges a primary violation of section 10(b) and rule 10b-5 of the Exchange Act by Metier, as well as control of the Company and culpable participation by Blanch. (Compl. ¶ 40-51.)  Therefore, because the Court finds that Plaintiffs' fraud-based claims—including their claim under section 10(b) and rule 10b-5—are not precluded

as a matter of law for the reasons discussed above, Defendant's argument is unpersuasive.

### E. Plaintiffs' Breach of Fiduciary Duty Claim

Finally, Blanch's attempt to obtain dismissal of Plaintiffs' breach of fiduciary duty claim as duplicative of their breach of contract claim also fails.[4]  As noted above, Defendant's argument raises an issue of whether dismissal at this time would be appropriate even if Plaintiffs' fiduciary duty claim were duplicative of its breach of contract claim, as Plaintiffs' breach of contract claim is asserted only against Metier and is therefore currently stayed because of the bankruptcy proceeding. See Joyce, 2008 WL 2329227, at *15.  Once again, however, the Court need not address this question because the compliant sufficiently alleges a fiduciary relationship

---

[4] In his Reply, Defendant also moves to dismiss all claims relating to Plaintiffs' acquisition of the 12 percent equity interest in the Company from Island Def Jam Music Group, a third party to this action, on the basis that neither Blanch nor Metier was a party to that contract. (Def. Reply at 11.) Because this argument was not raised in Defendant's initial memorandum, however, it is deemed waived. See United States v. Gabriel, 125 F.3d 89, 100 n. 6 (2d Cir. 1997) (noting that, "[b]ecause this argument was not raised in his initial brief . . . the argument is waived"), overruled in part on other grounds by Arthur Andersen LLP v. United States, 544 U.S. 696 (2005); see also CE Int'l Res. Holdings LLC v. S.A. Minerals LP, No. 12 Civ. 8087, 2012 WL 6178236, at *2 (S.D.N.Y. Dec. 10, 2012) (noting that "[i]t is improper in this district and this circuit to introduce new arguments in reply").

between Blanch and Plaintiffs independent of any obligations arising directly under the Purchase Agreements.

Although a claim for breach of fiduciary duty that is merely duplicative of a contract claim must be dismissed under New York law, conduct constituting a breach of contract may also give rise to an actionable fiduciary duty claim if "a legal duty independent of the contract itself has been violated." GPRF-I Equity Co., Ltd. v. HDG Mansur Inv. Servs., Inc., No. 13 Civ. 547, 2014 WL 1612004, at *4-5 (S.D.N.Y. Apr. 21, 2014) (internal quotation marks omitted). Specifically, a fiduciary duty claim is not duplicative of a breach of contract claim where the complaint pleads facts demonstrating that "the parties created a relationship of higher trust than would arise from their contracts alone." N. Shipping Funds I, LLC v. Icon Capital Corp., 921 F. Supp. 2d 94, 105 (S.D.N.Y. 2013).

Here, the complaint plainly alleges that Blanch owed Plaintiffs a fiduciary duty that was independent of any obligation arising directly from the Purchase Agreements by virtue of his position as a manager and member of the Company and Plaintiffs' ownership interest in the same. (Compl. ¶ 62-64.) Under New York law, a managing member of a limited liability company owes statutory and common-law fiduciary duties to the other members of the company, including the duties of good faith and care. See N.Y. LLC Law § 409; Tzolis v. Wolff,

No. 108353/05, 2006 WL 1310621, at *7 (N.Y. Sup. Ct. Mar. 20, 2006).   Moreover, the complaint alleges that Blanch breached his fiduciary duty by causing the Company to breach its contractual obligations to Plaintiffs "for the purpose of enriching himself and other insiders" and by using his authority at the Company "to enrich himself at the expense of Plaintiffs." (Id. ¶ 63.) For example, in the sixty days immediately following Plaintiffs' investment, Blanch is alleged to have used Plaintiffs' investment to pay himself "reimbursements" totaling $145,000, which he "supported with contemporaneous back-dated book entries." (Id. ¶ 33-34.)   These allegations go beyond the misconduct alleged in Plaintiffs' breach of contract claim and render Plaintiffs' fiduciary duty claim non-duplicative.

### III. Conclusion

For the foregoing reasons, Defendant Blanch's motion to dismiss the complaint is denied.

**SO ORDERED.**

Dated:     New York, New York
           February 2 4, 2015

_John F. Keenan_
John F. Keenan
United States District Judge